COBB, Judge.
The issue on this appeal is whether or not the defendant below, Sonny Wilson, was entitled to a judgment of acquittal on a charge of carrying a concealed firearm. The only evidence presented at trial in regard to the concealment charge came from the arresting officer, a county deputy named William Shaffer. Shaffer’s trial testimony was as follows:
MR. SHAFFER: The sequence was when I was traveling down Oak Street approaching him, he looked back at me, and then what was in his hand was placed against his left thigh. And then when I got ten to fifteen yards from him, I could see the butt of the handgun appearing out the back. And as I pulled along side, then I exited my vehicle and said “Sonny, drop the gun.”
BY MR. FISHER (Assistant State Attorney):
Q. Okay. If I ask you in a few moments to draw us a diagram of the area and the location of the parties about which you just testified, could you do that?
A. Yes.
Q. Okay. Now, after you said “Sonny, drop the gun,” what did he do?
A. He angled away from me and continued walking away.
Q. What, if anything — what, if any, action did you take at that point?
A. I drew my service weapon and again said “Sonny, drop the gun.”
Q. Used the same terminology.
A. Yes.
Q. “Sonny,” calling him by name, “drop the gun.” Did he comply?
A. No.
Q. What did he do?
A. He moved the gun to the front of his body with his back exposed to me and then took his hands out to the side of his body.
Q. What, if anything, did you do upon making that observation?
A. I again told him to drop the gun. Q. Did he comply?
A. Yes.
Q. What did he do?
A. Moved his hands to his — the area of his waist, then the gun fell to the ground. It was dropped, whichever.
Q. Did you determine the type of clothing that he was wearing?
A. Yes.
Q. What type of pants or shorts was he wearing?
*1112 A. They were more or less like a swimsuit type shorts or gym shorts, something like that.
Q. What kind of waistband did they have?
A. It was elastic.
Q. Did he have any pockets on those?
A. No, I didn’t observe any pockets.
Q. When he turned his back on you— excuse me. While he had his back to you when he had his hands in front of his body, were you able to see the object that you had earlier thought was the butt of a handgun?
A. No.
Q. At any time .when he had his back to you, were you able to see the object that you initially thought was the butt of a handgun?
A. No.
In Donald v. State, 344 So.2d 633 (Fla. 2d DCA), cert. denied, 353 So.2d 679 (Fla. 1977), the case primarily relied on by Wilson, the defendant was found guilty of carrying a concealed firearm. The issue facing the court was whether sufficient evidence was presented to establish that the firearm was in fact concealed. The evidence showed that after receiving reports of a man shooting a pistol, an officer hid and when the defendant came out of a building, the officer approached the defendant from the rear and ordered him to stop. During a pat-down search the officer felt a pistol lodged in the defendant’s belt. The officer testified that he could feel part of the pistol protruding from the defendant’s pants, but could not say whether the defendant’s shirt would have covered the pistol if he had viewed the defendant from the front. No one had seen the defendant from the front prior to the weapon being removed. The Second District, noting that proof of concealment is an essential element of the crime which must be proven beyond a reasonable doubt, reversed, finding that the evidence presented was not inconsistent with a reasonable hypothesis of innocence. Id. at 634. See also Powell v. State, 369 So.2d 108 (Fla. 1st DCA), dismissed, 373 So.2d 461 (Fla.1979) (denial of motion to dismiss reversed where police officer clearly saw handle of firearm protruding from defendant’s rear pants pocket); Padron-Canto v. State, 414 So.2d 1151 (Fla. 3d DCA 1982) (judgment reversed where evidence showed that the firearm held by the defendant was plainly visible to the ordinary sight of another person).
In Cope v. State, 523 So.2d 1270 (Fla. 5th DCA 1988), this court recently recited the standards for concealment of firearms. Citing State v. Teague, 475 So.2d 213 (Fla. 1985), the court held that the term “concealed” must be construed in accordance with its usual and ordinary meaning. 523 So.2d at 1271. As stated in Ensor v. State, 403 So.2d 349 (Fla.1981), cited in Cope, “the critical question turns on whether an individual, standing near a person with a firearm or beside a vehicle in which a person with a firearm is seated, may by ordinary observation know the questioned object to be a firearm.” 403 So.2d at 354-355. This court in Cope also rejected the state’s contention that if any part of a firearm cannot be seen upon casual observation the issue is automatically one for the jury. As stated in Cope “that would mean a pistol lying on its side could be found to be concealed because the viewer could not see the down side.” 523 So.2d at 1272.
In the instant case, as in Donald, there was no evidence presented by the state that Wilson ever concealed the firearm from ordinary observation — indeed, the most reasonable inference from the testimony is that he temporarily stuck the barrel of the pistol into the waistband of his shorts before dropping the pistol on the ground pursuant to Shaffer’s command.
Accordingly, the concealment conviction below is reversed.
SHARP, C.J., and DANIEL, J., concur.